UNITED STATES, Appellee,

v.

Master Sergeant James T. RUTKO, Sr., 194–38–1375, United States Army, Appellant.

ACMR 9101712.

U.S. Army Court of Military Review.

29 Jan. 1993.

For Appellant: Arthur R. Samuel (argued); Captain Robert L. Carey, JAGC (on brief).

For Appellee: Captain Steven M. Walters, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Kenneth T. Grant, JAGC (on brief).

Before CREAN, BAKER, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

CREAN, Senior Judge:

The appellant, on mixed pleas, was found guilty, by a general court-martial composed of officer and enlisted members, of violating a general regulation by wrongfully fraternizing with lower ranking soldiers, maltreatment of soldiers under his authority, three specifications of sodomy, one by force and without consent, and three specifications of indecent acts, two to satisfy his lust and sexual desire and the other by encouraging, forcing, and directing the sexual act, in violation of Articles 92, 93, 125, and 134, Uniform Code of Military Justice 10 U.S.C. §§ 892, 893, 925, and 934 (1982). The convening authority approved the adjudged sentence of dishonorable discharge, confinement for five years, forfeiture of $500.00 pay per month for 60 months, and reduction to Private E1.

The appellant, with over twenty-three years of service in the Army, was the first sergeant of Headquarters Company, 2d Battalion, 72d Armored, 2d Infantry Division, Camp Casey, Korea. He had an excellent military record and had been selected to attend the Sergeant Majors Academy. The headquarters company had over 300

soldiers assigned and under the direction of the appellant. The appellant pled guilty to engaging in various sexual acts with or committing indecent acts on male members of his company. He pled not guilty, but was found guilty, of sodomizing one of his soldiers, by force and without consent, and of engaging in indecent acts to satisfy his lust or sexual desire or by encouraging, forcing, and directing the sexual act. The appellant pled guilty to the sodomy and indecent acts, but contends they were either consensual or were not to satisfy his lust or sexual desires. The appellant also pled not guilty, but was found guilty, of maltreating the soldiers involved in the sexual acts.

The appellant used a similar "modus operandi" to engage in the sexual activities. He would go to the bars in the local Korean towns frequented by his soldiers or to the soldiers' rooms in the barracks. He would drink with them and talk to them. After becoming intoxicated, he would ask the soldiers to escort him to his room to ensure he arrived safely or he invited them to his room to talk about the unit. Once in his room, the appellant would play a pornographic movie on his VCR and then make sexual advances on his soldiers. Some soldiers rebuffed the appellant after he had touched them, thus committing an indecent act, while others were sodomized by the appellant. The maltreatment charge is based on the appellant abusing his position and authority as first sergeant to entice the five soldiers to his room for the purpose of engaging in the sexual acts.

On the offense of forcible sodomy, Private (PV2) L, a twenty-three-year-old soldier who had been in the Army for ten months, testified that he was in his barracks room with other soldiers at approximately 0300 hours drinking beer and watching television. The appellant entered and sat with his soldiers drinking beer and talking. After some time, the appellant asked PV2 L if he would escort him back to his room because he was intoxicated and wanted to talk to PV2 L about being his driver. The appellant did not threaten or force him to come to his room. Once in the appellant's room, they talked for awhile and the appellant fixed some breakfast food for them. At about 0600 hours, PV2 L said he was tired and the appellant told him he could sleep in his room. After a short discussion about whether he would stay, PV2 L fell asleep in his shirt and pants on top of the covers of the appellant's bed. About two hours later, he awoke with his pants off one leg and the appellant performing fellatio on him.

The appellant testified that he had been drinking in the local village that night with other noncommissioned officers (NCO). After they returned to the unit, he checked on his soldiers in their room. He stayed and drank some more beer. As he left, he asked PV2 L to help him to his room because he was intoxicated. Once in his room, he fixed breakfast for them and they talked about PV2 L becoming his driver. Private L became sleepy and the appellant offered to let PV2 L sleep on his bed. Private L at first refused but then fell asleep on the bed. The appellant then also fell asleep on the bed. Sometime later, he awoke with PV2 L holding the appellant's penis in his hand. Private L said "I'd love to." The appellant pulled PV2 L's shorts off and performed fellatio on him. After the act, PV2 L quickly got up, grabbed his clothes, and left the room telling the appellant he was scared and panicky.

On one of the indecent acts with intent to satisfy his lust or sexual desire, Corporal (CPL) C testified that he met the appellant at one of the local Korean bars. The appellant asked CPL C to escort him to his room. When they reached the appellant's room, the appellant asked him to come in to discuss the unit. They both sat on the couch and started to talk. The appellant placed his hand on CPL C's thigh and then his groin area. Corporal C shifted his weight so that the appellant's hand was not on his groin. The appellant left the couch and laid down on his bed. Shortly thereafter, CPL C left the appellant's room. Corporal C testified he did not immediately leave the appellant's room because he was concerned about the appellant in his intoxicated condition. The appellant testified that he placed his hand on CPL C's knee and groin to see

what his reaction would be. Corporal C's reaction was to move away.

On the other incident of indecent acts with intent to satisfy lust or sexual desire, PV2 S testified that he was in his room asleep at about 0400 hours when the appellant entered. The appellant was intoxicated and wanted PV2 S to escort him to his room. Once in the appellant's room, the appellant played a pornographic movie on the VCR. The appellant also fixed them some food and they talked about the unit. The appellant leaned over and placed his elbow on PV2 S's groin. They continued to watch the pornographic movie and the appellant placed his hand on the groin of PV2 S. The appellant testified that he was intoxicated, but remembers touching PV2 S with his hand and elbow on the groin.

Private B, a nineteen-year-old soldier in the Army for less than a year, testified, on the offense of committing an indecent act by encouraging, forcing, and directing he masturbate, that he was in his barracks room watching television with other soldiers. The appellant entered the room and started talking to the soldiers. A short time later, he asked PV2 B if he wanted to go to his room to watch one of the appellant's new movies. They went to the appellant's room and the appellant played a pornographic movie. Private B watched the movie from the couch while the appellant sat on his bed. The appellant then asked PV2 B if he felt like masturbating. Private B stated that he did not, but the appellant demanded that he masturbate. Private B refused, but the appellant demanded again that he masturbate. Private B stated that he was scared and in shock. The appellant had him stand up and stood very close in front of him. He watched PV2 B masturbate to completion. He then asked PV2 B to watch him masturbate. Private B refused and sat down on the couch. The appellant told him not to say anything because no one would believe him because he was only a private.

The appellant testified that, approximately one week before this incident, he was checking the barracks and found PV2 B in his room masturbating. On the night of the incident, PV2 B told him he wanted to talk to him. He invited PV2 B to his room. They started to watch a pornographic movie and PV2 B asked him if he masturbated. Private B stood up and continued to masturbate. The appellant then stood up and masturbated.

The appellant was found guilty, in accordance with his pleas, of two specifications of consensual sodomy with Private First Class (PFC) C, who had been in the Army only nine months. Private First Class C testified that he was drinking in a local Korean bar when he got into a dispute with the owner over money. The appellant came in, settled the dispute, and got his money back. He and the appellant went to other bars and continued to drink. The appellant told PFC C to make sure that the appellant got back to his room. Private First Class C accompanied the appellant to his room. The appellant put a pornographic movie on his VCR and told PFC C to get comfortable by taking his shoes and shirt off. The appellant sat on his bed and PFC C sat on the couch. The appellant told PFC C to get more comfortable and lay on the bed. Private First Class C at first refused, but complied after the appellant insisted. While they were laying on the bed and watching the pornographic movie, the appellant asked PFC C for a hug. Private First Class C thought this was strange, but he permitted the appellant to hug him. The appellant then started to pull his pants down and perform fellatio on him. After the appellant completed the act of fellatio, he asked PFC C to do the same to him. Private First Class C tried to perform fellatio on the appellant, but found it disgusting and could not do it. He got up and took a shower and fell asleep again on the bed. He woke up a few hours later with the appellant again performing fellatio on him. After the act of fellatio was completed, PFC C left the room.

About two months later, PFC C was in his room in the barracks with other soldiers when the appellant entered and told PFC C that they were going to go to the local village to party. Private First Class C did not want to go, but the appellant insisted. The two went to a local bar, met other

soldiers and NCO's and got drunk. Some of the soldiers returned to the appellant's room to continue drinking. Private First Class C stated that he felt safe going to the appellant's room because other soldiers were there. When the other soldiers left, PFC C tried to leave, but the appellant stopped him ostensibly to talk. Private First Class C told the appellant that he want to leave, but the appellant wanted him to stay. When the two were alone, the appellant told PFC C to sit on the couch. They talked about PFC C becoming the appellant's driver. Private First Class C got up, but the appellant grabbed him and pulled him back on the couch. The appellant started to touch PFC C's groin area. Private First Class C thought there was no use fighting the appellant so he "gave him what he wanted" by permitting the appellant to perform fellatio on him. After the appellant finished, PFC C left the room. PFC C stated that he committed the acts because he was scared and felt he could not refuse the appellant because he was the first sergeant.

The appellant asserts as error that he was denied effective assistance of counsel because his trial defense counsel did not present evidence of a prior inconsistent statement of PV2 L; the testimony of PV2 L and PV2 B was contradictory, and, as accomplice testimony, should not be considered; the evidence is legally and factually insufficient to support the findings of guilty of sodomy, indecent acts, and maltreatment; the appellant did not have the sufficient *mens rea* for the offenses because of the sexual abuse he suffered as a child resulted in a post-traumatic stress disorder; and, that the sentence is too severe. Oral argument was heard on 19 January 1993. We disagree with all assertions of error and affirm.

Applying the standards of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and *United States v. Turner*, 25 M.J. 324 (C.M.A.1987), we hold that the evidence is legally and factually sufficient to support the findings of guilty of sodomy on PV2 L by force and without consent, indecent acts with CPL C and PV2 S with intent to satisfy his lust or sexual desires, and indecent acts with PV2 B by encouraging, forcing, and directing him to masturbate in front of the appellant. Applying the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *United States v. Scott*, 24 M.J. 186 (C.M.A.1987), we hold that trial defense counsel performance was effective. The only assertion that merits discussion is the legal and factual sufficiency of the evidence of maltreatment.

■ The elements of the offense of maltreatment are that the accused was cruel, oppressive, or maltreated a person subject to the orders of the accused. Manual for Courts–Martial, United States, 1984, Part IV, para. 17b [hereinafter MCM, 1984]. Persons are subject to the orders of the accused when by duty assignment they are required to obey the lawful orders of the accused. MCM, 1984, Part IV, para. 17c(1). The cruelty, oppression, or maltreatment need not be physical, and includes sexual harassment. Sexual harassment includes deliberate or repeated offensive comments, gestures, or acts of a sexual nature. MCM, 1984, Part IV, para. 17c(2). Maltreatment is a factual question to be resolved by the trier of fact. *United States v. Finch*, 22 C.M.R. 698 (N.B.R. 1956). It is a general intent crime and the offense occurs when the treatment, viewed objectively, results in physical or mental pain or suffering and is abusive or otherwise unwarranted, unjustified and unnecessary for any lawful purpose. *United States v. Hanson*, 30 M.J. 1198 (A.F.C.M.R. 1990), *aff'd*, 32 M.J. 309 (C.M.A.1991).

■ There is no question that the five soldier victims are subject to the appellant's orders. As the unit first sergeant and senior enlisted soldier in the company, every soldier in the company would be subject to his orders. The appellant used his position and prestige as the first sergeant to target soldiers in his unit to lure to his room to take advantage of them for unwarranted and unlawful sexual acts. We find that using a superior military position to induce soldiers to commit unwanted sexual acts is maltreatment. Accordingly, we

hold that the evidence is legally and factually sufficient to support the findings of guilty of maltreatment.

The findings of guilty and the sentence are affirmed.

Judge BAKER and Judge GONZALES concur.